Good morning, Your Honor. Martin Guajardo on behalf of Gonzales Singh. You've been before me before, haven't you? Yes, of course. Thank you, Your Honor. I think we have a case here that shows us that there was an attempt by a non-citizen to try to correct the record. And in doing so, he finds himself faced with more than just the obstacle of trying to provide the proper documents and say, I'm back in the United States. Here I am. I wasn't here when the order was issued. And what's interesting, and I think that the focal point for us is really accountability. What happened here? We have someone who enters the country on a tourist visa, stays here for the five or six months that he's allowed to stay, decides to make an application for asylum. After the application has been pending with the asylum office, he hasn't received a notice that it's been received by them. He sends a letter to the asylum office and notifies them, tells them, hey, look, I've decided to go back to India. I'm going to go try to find a place to live someplace other than where I was, where I had problems. Sends a letter in and withdraws his application. The agency, the asylum office, sends him a Form 5 by 7 printout and essentially acknowledges his withdrawal. A month later, he leaves the United States. He thinks that's it. He's withdrawn his application. He's left. Well, the agency, four months later, the agency issues a charging document bringing him in proceedings. The immigration judge, Judge O'Leary, out in Arizona, decides that he's going to go forward with a hearing and issues an order, an absentia, final order of deportation against Gulzar Singh. Sometime the following year, in 1999, the same individual makes an application to the American consulate. He's issued a nonimmigrant visa, makes an application once again at a port of entry, and his passport is stamped. They stamp it. He's admitted as a tourist once again to the United States. That's in 1999. After some time of being here, he hires an attorney. He finds out that he has this outstanding order. He hires an attorney, and the attorney then proceeds to provide a copy of the passport, a copy of the visa that was used to enter the United States, places the stamp on the passport, and essentially requests the court to reopen the proceedings and vacate the order of deportation. And that's what brings us here today. The judge says no. The Board of Immigration Appeals, at first instance, essentially takes jurisdiction, makes another decision, turns around at the end of the year and essentially comes back and says, we don't have jurisdiction. You filed your motion to reopen after you had already left the United States. We don't have jurisdiction. I think this court does have jurisdiction now to send this case back so that the agency can put things in order. I think that we're faced today with just a host of different security problems, and it's all about accountability. An individual who files for asylum and for several months has no receipt from the immigration service, former immigration service, that's a problem. Today I think that problem has been corrected. But at the time that this individual, Gulzar Singh, filed, he waited several months and never obtained a receipt, even after he sends in his letter and says, I'm withdrawing the application. The agency, it seems to me, notwithstanding the regulations that tell us, look, these are the procedures that you should take on yourself to apply for voluntary departure, the agency does not take that opportunity to tell him, we've accepted your withdrawal, and if you're going to leave, show up at 630 Sansom Street, show your passport and show that you're ready to leave. They don't tell him that. In fact, they don't do anything for several months until they issue the notice to appear at that time for him to go back in front of an immigration judge. I think that here there's one case that I've cited that's a case that was used in a criminal proceeding, and that's the Wietersburg case. I think that we can find guidance from that case, because if you don't have a valid order of removal, notwithstanding that the individual left the United States, we should be able to come back in and essentially correct the record, because as a practical matter, I think what we have here is what's going to happen if this court denies the petition, dismisses the petition? What's going to happen? Will Goldsroth Singh have an order that will now be effectuated by the agency? The answer is no. And we know that because this court decided in Morales Izquierdo that that's not what the agency can do. The best that the agency is going to do is they're going to issue a charging document that will place him in proceedings before the agency. There will be no final order of deportation or removal that can be used. There will be no warrant of arrest. They can place him in proceedings. He can make his application, but that's where we're going to be. I think that the case shows an effort by a noncitizen trying to correct the record after he's come back in, and it also shows what's happened within the agency. There's not a lot of accountability. There's supposed to be something that occurs procedurally by way of here's an application, here's your receipt, we've accepted it, here's the withdrawal, here's what you should do. And that didn't happen in this case. If you have any questions, I'm ready to answer them. I don't see any. You have a few minutes left for rebuttal. Why don't we hear from the government, and then you can step back up if you wish. Thank you, Your Honor. We'll hear from the government at this time. Good morning, Your Honor. May it please the Court. It's good to be back here. My name is Andrew McLaughlin. I represent the Respondent Attorney General of the United States in this case. I appreciate the collegiality of Mr. Lucenso-Grijardo. I want to engage in the same sort of dialogue. I think his exposition of the facts of this case is good in that it shows you a situation that exists. I would like to point out that there's one portion of this that he kind of left out of his exposition of the facts, and that is when Mr. Singh completed his asylum application and submitted his asylum application, he had in front of him the instructions for the asylum application, which specifically inform him that in presenting your asylum application, you are placing yourself under the jurisdiction of the agency. You are imposing on yourself a burden to, one, keep the agency up to date on your address because, and it specifically says this in the 1997 instructions to the asylum application, because if your asylum application is denied, we're going to use that address to send you your notice of denial. We're going to send the order to show cause or notice to appear, the referral to the immigration court. It's all going to go to that address for the reason, and you can be removed as a result of that. And it fits under, and it's under a ---- Kagan. But doesn't the statute or the regulations say that you must give your change of address if you are in the country? No. It does not say that. And actually, I mean, there's actually ---- Wietersburg, I think, is the case that counsel was referring to. That is a case in which the agency told the individual that he could wait for his hearing outside the United States and was paroled back into the United States for a hearing. That's an example of a situation where the obligation to keep the agency up to date on your address outside the country is clearly in place, and it's always been that way. There's nothing in the regulation that says you don't have to do that when you're outside the country. And I'd add ---- A Petitioner can always withdraw an application for asylum, right? That is correct, Your Honor. And if the person is either not in status or about to go out of status when they file the withdrawal, the responsible thing for them to do is to leave, right? Yes, exactly, Your Honor. That is what we ask them to do. Because the petition for asylum is what allows them to stay pending its adjudication, correct? Exactly, Your Honor. Okay. So if that's not before the agency anymore, the person really should leave the country. Exactly. And that's exactly what this gentleman did. No, Your Honor, it's not. The instructions specifically tell you how to do that. It says if you're going to travel outside of the United States, either to leave or to travel and come back in accordance with the status that you're given as part of your asylum application, you have to come to the agency. You have to voluntarily depart. And there's a regulation that describes, and there's frankly a statute that describes, how you go about voluntarily withdrawing, voluntarily departing from the United States. And it's not ---- The notice is right here in the application that he submitted, the application for the relief that he sought. If he had withdrawn his petition and stayed after a period of time, presumably, the government would have served him with a notice to appear for removal proceedings? The government did. No, I'm just asking, in a normal case, not necessarily this case, but in a normal case, let me finish my question and then you can formulate your answer, okay? In a normal case where someone withdraws and they stay, they do the irresponsible thing, they stay, then the government sets in motion the proceedings to remove them, correct? That is correct. Okay. Counsel, I want to call your attention to 8 U.S.C. 1305A. And it reads, each alien required to be registered under this subchapter who is within the United States shall notify the Attorney General in writing of each change of address. Are you familiar with the regulation, Counsel? Yeah, I'm familiar with it. She's referring to the registry statute. I don't have a precise answer for you. My general answer is that you had a precise answer earlier. You told the panel that there was no such requirement. The answer is that your departure, if you tell the agency that you're departing from the United States, then you don't have to tell them where you are outside the United States. That's not what the statute says. The statute must be read in conjunction with the other portion of the statute that says you have to tell us when you're leaving. I think there's no way to read that independently of the two. The registry statute is designed for people who are required to register and required to update their address because they're here. Right. The voluntary withdrawal statute is designed for people who have submitted themselves to the system and are trying to leave. The two have to be read together. And if you don't tell us, if this alien had come to us and said, I'm leaving, he didn't do that. He said, I think I would be better off if I went home. He didn't say I'm leaving. He didn't say I'm leaving today. He didn't say I'm leaving a month from now, which is what he ended up saying. He did say he's withdrawing his petition. That's correct. And he did leave on the 1st of May. You indicated somebody, maybe the agency, indicated that he should have had an airplane ticket or something to prove this, but his passport proves it. The passport demonstrates that he entered India on May 5th, I think, or May 3rd, is what the passport demonstrates. Yes, it does. It does not demonstrate that he was not here when the notice to appear was served. It does not demonstrate that he was not here for the hearing. It does not demonstrate that he did not, in fact, receive the notice to appear. What he doesn't tell you is he entered the United States and the same day flew from Los Angeles to Reno, Nevada and lived in a house in Reno, Nevada from that date. He doesn't tell you who lived in that house. He doesn't tell you who signed for the notice to appear when it was sent to that address. He does say that he never found out about the notice to appear, but that, frankly, is not part of the statutory construct. What I'm telling you is that Congress had something in particular in mind. They say if you come to the United States, you give us your address under the registry statute. If you submit to the jurisdiction of the agency under asylum, you have certain obligations that come to that, including withdrawal through the agency, including keeping your address up to date. And if you fail to do that, we're going to serve a document on you under 231, 1229A, and we're going to serve it on the address where you gave the address you gave us, and that by itself is sufficient to establish jurisdiction of the immigration court. And if you've got to put yourself in the position of the immigration judge, all you know as the immigration judge, all you know as the agency is you don't know where this guy is. You do know that he's subject to removal. You do know that he was served in accordance with the statute with the notice to appear, which is the only thing that's required to establish removability and enter in an absentia order. So there just isn't any doubt that the immigration judge at the time did the right thing. So then you get the... This is an alien who obviously has, unlike many of the aliens, tried to do the right thing. He didn't read the fine print maybe, but he told the agency I'm withdrawing my application, I'm going home, and he did. Right. But that doesn't mean that he's not still subject to the statutory construct. That doesn't mean that he's established that the in absentia order against him was inappropriate. Now, I would note for you that the court specifically found that he hadn't established that he didn't receive, and that issue doesn't seem to be an argument here. If he didn't establish that, we don't have any argument regarding jurisdiction. There's nothing about credibility here, is there?  And he said I didn't get it. Keep in mind, this is not an asylum case. We're not dealing with asylum credibility here. We're dealing with the issue of whether he established by the heavy burden that's established for a motion to reopen. He said I didn't get it. He said that. That's correct. And in the face of the evidence that says it went to your address and somebody signed for it there, the immigration judge said that by itself, the fact that you left on a certain date, the fact that you say you didn't get it, isn't enough. Congress said in 239C that service on the address that you provide is enough by itself. That's enough to establish jurisdiction. That's enough for an in absentia order. Okay. I think we understand your argument. Thank you very much for appearing here today. Any rebuttal? Very, very briefly, Your Honor. I'd ask the panel to turn to page 19 of the administrative record. I'm going to just take a moment to read the two sentences of his letter. I believe that I should try to reside in a different city in my home country. I will do everything possible to live in peace. I have to agree with the Court that, you know, I think we have someone who is trying to do the right thing and is trying to go through the procedure of meeting his requirement. I think that if we look at page 21 of the administrative record, I think that the agency, once with that notice on April 16, 1998, could have taken one step besides the preprinted form indicating that the application was received and withdrawn, the notice to withdraw the application was received. They could have provided some instruction, even a notation, before you depart, appear at such address. That was not done. Thank you. Thank you, counsel. Thank both counsel for their arguments. The case just argued will be submitted for decision. And we'll proceed to the next case on the argument calendar, which is Basheen v. Gonzalez. Counsel will come forward, please.
judges: Lay , B. Fletcher, Hawkins